[Civ. No. 7291. Second Appellate District, Division Two.—December 17, 1932.]

WEYMOUTH CROWELL et al., Appellants, v. HARVEY INVESTMENT COMPANY (a Corporation), Respondent.

George H. Moore and Hubert Starr for Appellants.

Loyd Wright, Charles E. Millikan, Shapiro & Shapiro, Aaron Shapiro and Chaim Shapiro for Respondent.

WORKS, P. J.—Plaintiffs, as lessors, and defendant, as lessee, entered into an agreement whereby certain real property was let for the term of ninety-nine years. The instrument provided, in part, that the lessee should "bear and discharge all . . . taxes . . . which may be taxed, charged, assessed, levied or imposed upon said leased premises . . . at any time during the continuance of this lease . . . to the end that the rents . . . shall be received by said lessors without any abatement or deduction whatever and shall constitute . . . the net income of said lessors from said property during said term . . . And it is further covenanted that the lessee shall obtain and deliver to the said lessors . . . original tax receipts for all such taxes . . . ten (10) days before the delinquency thereof". In another part of the lease it was also provided that the lessee could "assign its leasehold interest hereunder and thereby be released from all obligations thereafter accruing hereunder; provided, and upon condition that all of the agreements, covenants and conditions imposed upon the lessee hereunder and due at the time of such assignment shall have been fully performed;

and provided . . . in the event of any assignment of the leasehold interest hereby created being made which does not comply with all the conditions and provisions hereof, the assignor shall be and remain liable under this indenture and be bound thereby as though no assignment had been made.''

An assignment of the agreement was made on January 31, 1928, but lessee had not then paid and never did pay, nor did its assignee ever pay, the second installment of taxes on the demised property for the fiscal year 1927–1928. This installment became ''payable on and after'' a day early in January, 1928, under the law (Pol. Code, sec. 3746, subd. 1). Because of the nonpayment of the installment and the consequent delinquency arising, the property was in due time sold to the state. Thereafter the lessors redeemed from the sale by the payment of the tax, with the penalties and costs added pursuant to law.

This action was commenced for the purpose of recovering installments of rent which became due after the assignment of the lease, upon the theory that the assignment did not relieve defendant of the obligation to pay such rents for the reason that the installment of taxes above mentioned had not been paid at the time the assignment was made. Judgment went for defendant and plaintiffs appeal.

The only point presented on the appeal is as to whether it was the duty of respondent, under the language of the lease above set forth, to pay the tax in question between the day in January fixed by law and January 31, 1928, the last-named day being that upon which the assignment was made.

The lease contains no specific statement that installments of taxes shall be paid by the lessee upon any particular dates, but we think the clear import of the instrument is in accordance with the views of appellants and that the judgment must be reversed. The portion of the lease providing for assignment was to the effect that at the time of an assignment all ''agreements, covenants and conditions imposed upon the lessee'' and *due* at the time of assignment must have been performed. Under section 3746 of the Political Code the tax installment to which we have referred was *payable* early in January, 1928. What is *payable* on a

certain date is *due* on that date (Webst. International Dict., def. "Payable": "That may, can or should be paid; justly due." Encyclopaedic Dict., def. "Payable": "Due; to be paid; legally enforceable." See, also, Words and Phrases, p. 5245, 2d ed., vol. 3, p. 926, def. "Payable"). By lease and law together, then, it is established that respondent should have paid the tax before January 31st in order that the assignment might operate to release it from obligation under the instrument.

If we disregard the presence of the word "due" in the provision concerning assignments of the lease there is yet another method by which it can be determined that the installment of taxes here in question was due before January 31, 1928. Section 1657 of the Civil Code reads: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained." It is obvious that the latter part of this section refers to the ascertainment of the exact amount of money to be paid. So much may be gathered from *Whittier* v. *Gormley*, 3 Cal. App. 489 [86 Pac. 726], if authority upon the point, in addition to the section itself, were necessary. Section 3746 of the Political Code provides that on or before the day when taxes are payable the tax collector must publish a notice to the effect, among other things, that they are payable on that day; and it will, of course, be presumed that this official duty is regularly performed. (Code Civ. Proc., sec. 1963, subd. 15.) This notice, together with all the provisions of the law concerning the assessment and collection of taxes, of which respondent was bound to take notice, pointed to the records from which, upon inquiry, respondent could have ascertained the amount of taxes to be paid. We think that what respondent thus could have ascertained he must be deemed to have ascertained, within the meaning of section 1657 of the Political Code. It would be strange indeed if a taxpayer should not be held to notice of such a matter, regulated as it is by law and by official line of duty and practice. In truth, it is quite possible, although we do not decide, that a taxpayer

must be deemed to know the amount of a tax assessed against him long before the day upon which it actually becomes payable under the law, especially when, as here, the tax payment in question is a second installment.

Respondent contends that the lease fixes the time for the payment of the respective tax installments at the date ten days before delinquency occurs under the law, this because of the provision that at that time he "shall obtain and deliver to the said lessors" original tax receipts. This clause follows the long provision headed by the statement that the lessee shall "bear and discharge" all taxes, etc., and is itself preceded by the phrase, "And it is further covenanted." Taking together all the portions of the lease which we have quoted, we think the provision as to the production of tax receipts has no bearing upon the question when the tax became due, but that it was inserted for the purpose of fixing the *last day* upon which payment should be made in order to insure to the lessors an ability to protect themselves, in time, against a delinquency in case payment were not made.

Respondent calls attention to the fact that section 3746 of the Political Code provides that the first installment of taxes shall be *due* and *payable* in October and that the second installment shall be *payable* in January. He then says: "It is thus noted that in the above section the statute does not provide that the second half of the taxes are *due*" (italics his) in January. This statement leads to the patent absurdity that there is no time fixed when second installments are due, while as to the first installments the legislature has prescribed such a date. The rather peculiar state of the statute on this subject goes for naught in legal effect, for we have already shown that the words "payable" and "due" mean the same thing. The use of both words in one place and of but one in the other is simply a legislative idiosyncracy. Either word, alone, would have served in both places, or one in one place and its synonym in the other.

It is said in appellants' brief: "Upon a reversal, judgment as prayed in the complaint may be entered without a new trial." This statement is not opposed by respondent. Moreover, the course suggested seems to us entirely proper.

246

Judgment reversed, with directions to the trial court to enter judgment for plaintiffs as prayed in the complaint.

Stephens, J., *pro tem.*, and Thompson (Ira F.), J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 15, 1933.